UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MICHELLE ANN BALDWIN,

    Defendant.
_____/

Hon. Paul L. Maloney

Case No. 1:10-cr-00146

**OPINION AND ORDER**

This matter is before the court following reevaluation of defendant Michelle Baldwin under 18 U.S.C. § 4241(e) pursuant to the court's order (Dkt. 158) granting the Government's Motion to Reevaluate Defendant's Competency (Dkt. 149) and an order for independent psychological evaluation (Dkt. 173) granting defendant's motion for such an evaluation (Dkt. 170). Following receipt of the Bureau of Prisons report, a competency hearing was held on December 21, 2011. A subsequent hearing following receipt of the independent evaluator's report was held on June 4, 2012, continuing on June 29, 2012. Following the hearing, the court allowed briefing regarding the parties' positions (Dkt. 188, 189).

**I. Procedural History**

The procedural history of this issue is somewhat tortuous. Because the court finds the summary by the Assistant United States Attorney is accurate and cogent (Dkt. 189), it is hereby adopted:

> On June 9, 2010, the Court ordered a psychiatric/psychological examination of Defendant pursuant to 18 U.S.C. § 4241(b). (Dkt. 26: Order for

Psychiatric/Psychological Evaluation.) The Federal Detention Center at Seattle/Tacoma, Washington ("FDC SeaTac") conducted the evaluations, and issued its report on July 29, 2010, finding Defendant incompetent to proceed. (Dkt. 37: FDC SeaTac Report on Competency dated July 29, 2010 ("FDC SeaTac Report") at 15.) The Court conducted a competency hearing pursuant to 18 U.S.C. § 4241(c)-(d) on June 18, 2010. (Dkt. 43: Minutes of Status Conference.) The Court granted the parties' stipulation of Defendant's present incompetence to stand trial, and ordered that Defendant be committed to the custody of the Attorney General at the Federal Medical Center in Carswell, Texas, for evaluation and treatment for restoration of competency pursuant to 18 U.S.C. § 4241(d). (Dkt. 44: Order of Commitment for Restoration of Competency.) FMC Carswell issued its report in December 2010, finding Defendant incompetent to proceed. (FMC Carswell Restoration Forensic Evaluation dated December 30, 2010 (Dkt. 71: "FMC Carswell Restoration Report") at 6.) In March 2011, the Court declared Defendant unlikely to be restored to competency in the foreseeable future, and released Defendant on bond to an adult foster care facility (Dkt. 76: Order Finding Defendant Not Competent; Dkt. 83: Bond and Order Setting Conditions of Release.)

On December 14, 2011, the Government filed motions to revoke Defendant's bond and to reevaluate Defendant's competency to stand trial. (Dkt. 142: Motion to Revoke Bond; Dkt. 149: Motion to Reevaluate Defendant's Competency.) The Court conducted an evidentiary hearing on December 21, 2011, after which the Court ordered Defendant's competency be reevaluated. (Dkt. 164: Motion Hearing Transcript to Reevaluate Defendant's Competency at 97.) FMC Carswell reevaluated Defendant, and issued its report on February 23, 2012, finding Defendant competent to proceed. (FMC Carswell Forensic Reevaluation Report dated February 23, 2012 (Dkt. 168: "FMC Carswell Reevaluation Report") at 7.) Defense expert, Dr. Daniel Rosen, submitted his report on May 4, 2012, but he did not come to a determination as to Defendant's competency. (Dkt. 176: Independent Psychological Evaluation dated May 4, 2012 ("Rosen Report") at 11.) The Court conducted competency hearings pursuant to 18 U.S.C. § 4241(c)-(d) on June 4, 2012 and June 29, 2012, during which the Court received evidence and argument concerning FMC Carswell's reevaluation and Dr. Rosen's evaluation of Defendant.

## II. Standard of Review

Under 18 U.S.C. § 4241(d), defendant is competent to stand trial only if a preponderance of the evidence demonstrates that defendant has "sufficient present ability to consult with [her] lawyer with a reasonable degree of rational understanding," and "a rational as well as factual

understanding of the proceedings against [her]." 18 U.S.C. 4241(d); *See, Dusky v. United States*, 362 U.S. 402, 402 (1960). Doubt concerning Michelle Baldwin's competence or lack thereof results from a developmental disability, i.e., mental retardation, rather than a mental illness.[1] Defendant's demeanor during the proceedings, evidence of irrational behavior, and medical opinions regarding competency are all relevant. A simple diagnosis of mental retardation is not dispositive of incompetency to stand trial. *Atkins v. Virginia*, 536 U.S. 304, 306, 318 (2002); *see also, Adams v. Haeberlin*, 404 F. App'x 11, 14 (6th Cir. 2010) . The circuits are split as to which party bears the burden of proving by a preponderance of the evidence that defendant is incompetent at a competency hearing. The court agrees with both parties' position that the burden is properly on the government in the somewhat unique circumstances of this case, where the court has already found that defendant is not competent to stand trial and the government is seeking a reversal of that finding.

## III.    Discussion

There is no dispute that Michelle Baldwin suffers from mental retardation as described by the American Association on Mental Retardation. She participated in special education as a child; her psychological report from Riverwood in 1995 shows a full-scale IQ of 65; her psychological report from SeaTac shows a full-scale IQ of 55; the December 2010 and February 2012 exams of Dr. Powers report a diagnosis of mental retardation; and the May 2012 exam of Dr. Rosen reports a diagnosis of mental retardation. Likewise, defendant Baldwin's diagnoses from Riverwood, SeaTac, Carswell, and Dr. Rosen all include noted deficits in more than two

---

[1] The court does note that the FMC Carswell reevaluation report by Leslie Powers, Ph.D., Forensic Psychologist, (Dkt. 168) did contain observations that Michelle Baldwin's initial FMC Carswell evaluation report may well have been influenced by her depression and anxiety at the time of the restoration efforts.

areas of adaptive behavior: communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, and leisure and work. Furthermore, nowhere do any of the professionals who have evaluated Michelle Baldwin accuse her of malingering and/or faking her significant deficits. *See e.g.* Dkt. 184, p. 29. However, the court does acknowledge that observations of staff at her former foster home and an attempted substitute foster home suggests some variability in Michelle Baldwin's capabilities. The court has given this serious consideration. However, for defendant to be a "faking" her level of disability, she would have to have consistently "fooled" a variety of professionals over a period of months, i.e., she would have to be a dedicated, disciplined, skilled actress. The undersigned, based on observation, cannot conclude that defendant has the skills or discipline to carry on such a charade.

Admittedly, defendant's score on the Competency Assessment for Standing Trial for Defendants with Mental Retardation (CAST-MR) is somewhat troubling (Dkt. 184, pp. 24-28), as is the fact that defendant Baldwin was able to obtain a driver's license, albeit after four attempts. (Dkt. 185, pp. 37-38). Perhaps more importantly though is that Dr. Leslie Powers, Ph.D. (after competency restoration efforts) as well as Dr. Cynthia Low, Ph. D. have both previously found defendant incompetent. Also, as pointed out by defense counsel, when considering defendant's responses over time (Dkt. 188, Exhibit A) one is left with grave doubts as to whether she can adequately assist in her defense. Finally, Dr. Rosen's independent evaluation of Defendant essentially comported with Dr. Low's and Dr. Powers' initial opinions. Dr. Rosen expressed vivid concerns regarding Defendant's ability to process anything other than the most concrete information. (Dkt. 86, p. 124). He had significant concerns about defendant

Baldwin's ability to "connect the dots" in terms of assisting in her own defense. (Id. at p.89). The court is inclined to agree with Dr. Rosen, and with Dr. Low's and Dr. Powers' earlier opinions that defendant is not competent and not likely to be restored to competency in the foreseeable future. The undersigned is also persuaded by defendant's conduct as observed during at least 16 hearings, and particularly by her responses when questioned by her attorney, the Assistant United States Attorney, and the court. Regarding behavioral observations, defendant Baldwin appeared indifferent to the proceedings. As noted, the court has had the opportunity to observe defendant in 16 separate court appearances. It also had the opportunity to question her in some detail at the most recent hearing when defense counsel called her as a witness. The court never observed her asking her attorney one question, or commenting on anything that occurred at any of the hearings. Her affect was utterly inconsistent with someone who understood the proceedings and was appropriately engaged in such.

The court also found defendant Baldwin's responses during direct and cross exam and questioning by the court to be very troubling. By way of example, when defendant was initially asked for her understanding of the meaning of her oath, she thought she was promising "[t]o stand trial." (Dkt. 185, pp. 28-29). Her understanding of the hearing was "[c]ompetency to stand trial," which she interpreted to be, "I'm guilty or not." (Dkt. 185, p. 30). As to her defense attorney, who in the court's opinion has gone above and beyond the call of duty, when defendant Baldwin was asked if she felt like Ms. Weiner-Vatter was on her side she stated, "Well, in a way." (Dkt. 185, p. 31). When questioned about what rights she would give up if she pled guilty, defendant Baldwin's response was: "Being locked up. Being in jail." (Dkt. 185, p. 32). When asked what a jury was: "people sit in a chair and about the case." (Dkt. 185, p. 33). She did

understand that the jury's job was: "If you're guilty or not." (Dkt. 185, p. 33). She did not understand what an oath was, nor what perjury is. (Id.) Defendant Baldwin knew that she had been charged with a felony but she did not understand what a felony is (Dkt. 185, p. 35). She understands "interstate" in her indictment to mean: "It's a highway." (Dkt. 185 p. 38). She did not know the meaning of the word "entice" although that is part of the charge against her. (Id.) She did not know whether the Assistant United States Attorney was accusing her of a crime or saying that she was innocent. (Dkt. 185, p. 45). She exhibited a great deal of confusion about an earlier child neglect case brought against her. (Dkt. 185, pp. 47-48). She reads a newspaper, but only the comics. (Dkt. 185, p. 57). She said she likes to read romance novels in her free time but that the last book she read was "maybe about a year ago." (Dkt. 185, p. 58).

The undersigned reviewed Ms. Baldwin's rights with her without conducting an arraignment. She did not understand what the right to remain silent meant. (Dkt. 185, pp. 63-64). She knows the name of her attorney, but not by whom her attorney is being paid. She does not understand what a unanimous verdict by a jury is. (Dkt. 185, p. 65). She does not understand the process for picking a jury (Dkt. 185, p. 66).

The court has a great deal of respect for the expertise of Dr. Leslie Powers, Ph.D., a forensic psychologist at the Federal Medical Center in Fort Worth, Texas. As noted by Dr. Powers in her testimony, a finding of competency requires that defendant have: First, a factual understanding of the proceedings against her; second, a rational understanding of the same; and third, an ability to assist in her defense. (Dkt. 184, p. 13). The court is more persuaded by Dr. Powers' conclusions after restoration attempts of 98 days (Dkt. 184, p. 16) as opposed to a single multiple-choice test. Based on all of the information before the court, it appears that Michelle

Baldwin has a, albeit somewhat sketchy, factual understanding of the charges against her, but the court cannot conclude that she has either a rational understanding or the ability to assist in her own defense.

**IV.    Conclusion**

The court does not find defendant Michelle Baldwin competent to stand trial.


Date:  October 22, 2012                                  /s/ Ellen S. Carmody
                                                        ELLEN S. CARMODY
                                                        United States Magistrate Judge